UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHELLE LEE ESPOSITO,

    Plaintiff,

        v.                                        No. 3:14-cv-1302(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____X

## **RECOMMENDED RULING ON PENDING MOTIONS**

      Plaintiff Michelle Lee Esposito has filed this appeal of the adverse decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 17]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 18]. The undersigned heard oral argument in this case on November 17, 2015. For the reasons set forth below, the Court recommends that the decision of the Commissioner should be affirmed.

## **Legal Standard**

      The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

**Background**

Plaintiff's application for DIB alleged a disability onset date of January 14, 2010. Her application was denied initially and upon reconsideration. A hearing was held before Administrative Law Judge Matthew Kuperstein (the "ALJ") on December 19, 2012. The ALJ issued an unfavorable decision on February 20, 2013. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This action followed. At oral argument, the parties stipulated to the facts as set forth in Plaintiff's brief and Defendant's brief, which the Court adopts and incorporates by reference herein.

**The ALJ's Decision**

The ALJ followed the established five step sequential process for determining whether a claimant is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 188). At step two, the ALJ found the following severe impairments: degenerative disc disease of the lumbar spine, obesity, depression, and anxiety. (R. 188). At step three, the ALJ found that these impairments, alone or in combination, did not meet or equal the severity of one of the listed impairments. (R. 188-189). The ALJ then found that Plaintiff retained the following residual functional capacity[1]:

> Plaintiff can perform sedentary work except she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to vibration and extreme heat. She is limited to work that involves routine tasks and only superficial and incidental interaction with the public or coworkers.

(R. 190). At step four, the ALJ found Plaintiff was unable to perform past relevant work. (R. 195). Finally, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to find

---

[1] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1).

2

that there were jobs in significant numbers in the national economy Plaintiff could perform. (R. 196). Accordingly, the ALJ found Plaintiff to be not disabled.

## Discussion

Plaintiff raises several arguments, which the Court will review in order of the emphasis given at oral argument.

    a.   Treating Physician Rule

First, Plaintiff asserts that the ALJ erred in weighing the opinion evidence of record. Two of Plaintiff's treating physicians – Dr. Feldman and Dr. Grier – provided medical opinions as to Plaintiff's functional limitations. Dr. Feldman, whom Plaintiff saw for her back pain, authored two medical source statements. On July 21, 2011 he indicated that Plaintiff was being treated for chronic low back pain, had made some steady progress with treatment, but that chronic back pain continued. (R. 1234). He limited her to not lifting objects heavier than five pounds; sitting, standing, and walking for no more than ten continuous minutes followed by a twenty minute rest; and climbing no more than a half flight of stairs. (*Id.*). He opined that Plaintiff's pain would substantially limit, and most likely prevent, her from working full or part time. (*Id.*). Dr. Feldman wrote an updated letter on January 15, 2013 in which he repeated his opinions and limitations as set forth in the 2011 letter. (R. 1244). The ALJ declined to give great weight to Dr. Feldman's opinion at to Plaintiff's extreme limitations, reasoning that it was not supported by Dr. Feldman's treatment notes or by other evidence in the record. (R. 192).

Dr. Grier, who provided mental health treatment to Plaintiff, completed a medical source statement in August 2012. She opined that Plaintiff had marked limitations in her ability to interact appropriately with the public and in responding appropriately to stress, and extreme impairments in coping with symptoms of depression and appropriately regulating emotions. (R.

527). The ALJ gave Dr. Grier's opinion little weight, finding that it was not reflected in treatment notes or other evidence of record. (R. 194).

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinions of Dr. Feldman and Dr. Grier, and in giving substantial weight to the opinions of the non-examining state agency medical consultants. Plaintiff relies on the Second Circuit's recent decision, *Greek v. Colvin*, 802 F.3d 370 (2d Cir. 2015) to bolster her position. In *Greek*, the Court of Appeals held that the ALJ's explanation for rejecting the opinion of a treating physician was factually flawed and the ALJ "failed to provide any other reasons for rejecting the opinion." *Id.* at 376. Plaintiff's reliance on *Greek* is misplaced; here, the ALJ properly considered the opinions of Drs. Feldman and Grier and provided "good reasons" for not fully crediting them. *See id.* at 375 (citation omitted).

As the *Greek* court reaffirmed, the treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See id.*; *see also* 20 C.F.R. § 404.1527(c)(2). There are situations where a treating source's opinion will not be afforded controlling weight. As the Second Circuit explained, when a treating physician's opinion is not deemed controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek* at 375; *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons

for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess,* 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2)).

In this case, the ALJ gave good reasons for not giving controlling weight to the opinion of Dr. Feldman as to Plaintiff's physical limitations. The ALJ sufficiently explained the medical evidence that showed adequate control of Plaintiff's pain with medication and treatment. For example, Plaintiff had reported greater than 75% pain relief for a time following both epidural steroid injections and lumbar facet blocks. *See* R. 957, 1197. Plaintiff similarly reported an increase in participation in activities of daily living while on her current medications. *See* R. 1201. The ALJ also pointed to numerous physical examinations with normal findings and mild to moderate imaging studies. *See, e.g.*, R. 955, 1080, 1200, 1203 (noting normal gait and tandem walks and no sensory deficits). Further, the ALJ fully described Plaintiff's reported daily activities, including taking care of her son, shopping, preparing meals, and driving. The ALJ's robust explanation of the evidence inconsistent with the extreme limitations to which Dr. Feldman opined constitutes good reasons for giving limited weight to his opinion.

As to Dr. Grier, the Commissioner argues that the overall evidence shows a level of mental impairment that was adequately addressed by the RFC's limiting Plaintiff to only routine tasks and only superficial and incidental interaction with others. The Court agrees. As in the case of Dr. Feldman, the ALJ sufficiently explained his reasons for not giving controlling weight to the opinion of Dr. Grier. For example, he highlighted treatment notes indicting Plaintiff's improvement with therapy, and discussed daily activities including handling money, reading, talking to friends on the telephone, and taking care of her son, which are inconsistent with the extreme limitations to which Dr. Grier opined.

Where the opinion of the treating physician is inconsistent with other substantial evidence in the record and, therefore, not entitled to controlling weight, an opinion of a non-examining doctor that is consistent with substantial evidence in the record may be afforded controlling weight. *See Cyr v. Astrue*, No. 3:10-cv-1032 CFD TPS, 2011 WL 3652493, at *11 (D. Conn. Aug. 19, 2011). The Court finds no error.

      b.  <u>Step Five Finding</u>

Plaintiff next argues that the ALJ's step five finding is flawed for various reasons. Plaintiff first asserts that the circuit board inspector job was misidentified by the VE. The Commissioner concedes that this position was misidentified, but posits that, even with this job omitted, the Commissioner has still met her step five burden with the surveillance system monitor job (1,260 jobs in Connecticut and 997,000 jobs nationally). To meet her burden at step five, "the Commissioner need show only one job existing in the national economy that [claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)). And, the numbers of positions available are sufficient. *See Daniels v. Astrue*, No. 10 CIV. 6510 RWS, 2012 WL 1415322, at *17 (S.D.N.Y. Apr. 18, 2012) (1,236 surveillance system monitor jobs regionally 25,000 nationally met step five burden).

Plaintiff also raises two issues with respect to the surveillance system monitor job. First, she argues that this position, which the Dictionary of Occupational Titles ("DOT") has assigned a reasoning level of 3, exceeds the RFC's limitation to "routine tasks." Courts in this district have found that a limitation to only short, simple instructions is consistent with jobs requiring level 2 or 3 reasoning. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 409 (D. Conn. 2012)

*aff'd,* 515 F. App'x 32 (2d Cir. 2013). The Court is not persuaded that a limitation to routine tasks is at odds with a reasoning level 3 position.

Finally, Plaintiff argues that the VE's testimony about this position described it as a private sector job, whereas the DOT lists it as a government job, and that the ALJ erred by neither acknowledging nor explaining this conflict. This argument, without more, is insufficient to convince the Court that there is an error at step five. *Cf. Haskins v. Comm'r of Soc. Sec.*, No. 5:05-cv-292, 2008 WL 5113781, at *15 (N.D.N.Y. Nov. 25, 2008) (rejecting argument that the VE's testimony was not credible because it included surveillance system monitor jobs within the private sector when there was no dispute as to the plaintiff's capacity for sedentary work and no challenge to the VE's classification of the position as sedentary).

      c. <u>Evaluation of Impairments</u>

Third, Plaintiff contends that the ALJ did not fully consider the effects of her obesity when evaluating her symptoms at step three. At oral argument, Plaintiff's counsel clarified that Plaintiff was not arguing that she met one of the Listings, but rather than the ALJ erred in analyzing whether her impairments, along with obesity, equaled one of the Listings. The Court finds no error.

While obesity is no longer an independent listed impairment, it must be considered in conjunction with the other listing in the Appendix. *Crossman v. Astrue*, 783 F. Supp. 2d 300, 309-10 (D. Conn. 2010); SSR 02-1p; *Titles II and XVI: Evaluation of Obesity*, 67 FR 57859-02. At step three of the sequential analysis, obesity is considered in combination with other impairments. SSR 02-1p. Here, the ALJ states in the step three analysis that Plaintiff "has been losing weight and there is no documentation of complications related to her obesity." (R. 188). Further, when an ALJ relies on medical reports that note a claimant's obesity, courts will find

that the ALJ properly considered it. *See Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) ("[W]e agree with the District Court that the ALJ implicitly factored [claimant's] obesity into his RFC determination by relying on medical reports that repeatedly noted [claimant's] obesity and provided an overall assessment of her work-related limitations."). Here, the formulation of the RFC specifically discusses medical records noting Plaintiff's obesity. *See id.* In sum, there is no evidence, and Plaintiff points to none, that the ALJ did not consider Plaintiff's obesity properly.

      d.  <u>Evaluation of Mental Impairments</u>

Plaintiff additionally argues that the ALJ's conclusions with respect to her mental impairments are not supported by substantial evidence. The ALJ analyzed whether Plaintiff's mental impairments met or medically equaled Listings12.04 (affective disorders) and 12.06 (anxiety-related disorders). To satisfy the paragraph "B" requirements of these listings, Plaintiff must show an affective and/or anxiety disorder resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. If Plaintiff does not meet the "B" criteria, she can still meet the listing by satisfying the criteria in paragraph "C." To satisfy the "C" criteria of 12.04, Plaintiff must show:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>     1. Repeated episodes of decompensation, each of extended duration; or
>     2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*  To satisfy the "C" criteria of 12.06, Plaintiff must show a complete inability to function independently outside of her home.  *Id.*

The ALJ's conclusions are supported by substantial evidence.  The ALJ's findings as to each of the first three "B" criteria are well supported by significant daily activities Plaintiff can complete, and by mental health records largely showing that Plaintiff's attention and concentration are unimpaired.  Specifically, Dr. Grier opined that Plaintiff had no limitations in understanding, remembering, and carrying out short, simple instructions.  (R. 526).  As to Dr. Grier's opinion that Plaintiff had a marked limitation in interacting with the public, even assuming that this would equate to a marked limitation in social interaction, the Court has already explained why this opinion was not controlling.  *Supra*, at 5.  Likewise, Dr. Franklin-Zitzket, who performed a consultative exam, observed Plaintiff as having a logical thought process, as able to perform one and two step math calculations and serial sevens, and as able to think abstractedly.  (R. 875).  She additionally noted that Plaintiff's memory, attention, and concentration seemed unimpaired during the interview.  (*Id.*).  Further, there is no evidence in the record (and Plaintiff points to none) of repeated episodes of decompensation.  In all, substantial evidence supports the ALJ's findings with respect to Plaintiff's mental impairments.

### e. Credibility

Finally, while not addressed at oral argument, Plaintiff's brief posits generally that the ALJ improperly assessed the credibility of Plaintiff's subjective complaints.  The Court disagrees.  When determining a claimant's RFC, the ALJ is required to take into account the claimant's reports of pain and other limitations.  20 C.F.R. § 404.1529.  The ALJ is not,

9

however, required to accept the claimant's subjective complaints without question. *Taylor v. Astrue,* No. 3:09-cv-1049, 2010 WL 7865031, at *9 (D. Conn. Aug.31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The regulations set forth a two-step process for this evaluation. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a). Next, the ALJ must determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.* The ALJ undertook the requisite analysis and provided adequate reasoning in support of his credibility finding.

## Conclusion

The Court does not intend to minimize the genuine difficulties the plaintiff confronts on a daily basis, and the Court appreciates the thorough and able efforts of her counsel. Nevertheless, after a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that his decision is supported by substantial evidence. Accordingly, the Court recommends that Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 17] should be granted and that Plaintiff's Motion to Reverse [Doc. # 16] should be denied.

This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling must be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or

modification of the Recommended Ruling in whole or in part. *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this 23rd day of November, 2015, at Bridgeport, Connecticut.

                                       */s/ William I. Garfinkel*
                                       WILLIAM I. GARFINKEL
                                       United States Magistrate Judge