## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHELLE LEE ESPOSITO        :
      Plaintiff,             :
                             :
v.                           :        No. 3:14-cv-01302 (VAB)
                             :
CAROLYN COLVIN, Acting Commissioner  :
of Social Security,               :
      Defendant.           :

## RULING AND ORDER

On September 19, 2014, Plaintiff, Michelle Esposito, initiated this lawsuit by filing a Complaint under 42 U.S.C. § 405(g). Compl., ECF No. 1. Ms. Esposito seeks the reversal of a final decision by Defendant, Carolyn Colvin, the Acting Commissioner of Social Security (the "Commissioner"), denying Ms. Esposito's application for disability insurance benefits. Mot. to Reverse Decision, ECF No. 17. On November 23, 2015, Magistrate Judge William I. Garfinkel issued a ruling recommending that the Court affirm the decision of the Administrative Law Judge ("ALJ") in Ms. Esposito's case. Recommended Ruling, ECF No. 24. On December 21, 2015, Ms. Esposito formally objected to the Recommended Ruling. Pl. Obj., ECF No. 26. The underlying facts of this case are fully set forth in the Recommended Ruling.

Rule 72(b)(3) of the Federal Rules of Civil Procedure and Local Rule 72.2(b) of the Local Civil Rules of the United States District Court for the District of Connecticut require the Court to review *de novo* any sections of the Recommended Ruling to which any party properly objects. Ms. Esposito has objected to the Recommended Ruling on the following grounds: (1) it affirmed an improper application of the "treating physician rule"; (2) its "step five" analysis was erroneous; and (3) its credibility assessment was inadequate. Pl. Obj., ECF No. 26. Each of these objections largely repeats arguments made before Magistrate Judge Garfinkel. *See*

1

*Johnston v. Colvin*, No. 3:13-CV-00073 (JCH), 2014 WL 1304715, at *1 (D. Conn. Mar. 31, 2014) ("Where the objecting party simply reiterates her original argument, the court reviews the Magistrate Judge's recommended ruling only for clear error." (citing *Pall Corp. v. Entegria, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008); *Burgos v. Astrue*, No. 3:09–CV–1216 (VLB), 2010 WL 3829108, at *1 (D. Conn. Sept. 22, 2010))).

The Court has carefully reviewed the Recommended Ruling, Plaintiff's Objections, the ALJ's Decision, and the evidence in the administrative record pertinent to the specific objections Ms. Esposito raised.  For the reasons outlined below, the Recommended Ruling is **ADOPTED** in its entirety, and for the well-stated reasons provided in the Recommended Ruling, Ms. Esposito's Motion to Reverse the Decision of the Commissioner [ECF No. 17] is **DENIED** and Defendant's Motion to Affirm the Commissioner's Decision [ECF No. 18] is **GRANTED**.

**1) Treating Physician Rule**

Ms. Esposito argues that both the ALJ decision and the Recommended Ruling improperly applied the "treating physician rule" by failing to give controlling weight to the opinions provided by two of her treating physicians, Dr. Daniel Feldman and Dr. Aleesha Grier.  The Court disagrees.

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Ms. Esposito argues that the ALJ decision and the Recommended Ruling improperly failed to consider all of the substantial evidence in the record when

concluding that the opinions of Dr. Feldman and Dr. Grier should not be given controlling weight.  Ms. Esposito does not deny that there is some evidence in the record that contradicts these treating physicians' conclusions.  *See* Pl. Obj. at 7 ("We confront a situation in this case in which there is, to be sure, a small quantum of evidence that undercuts Dr. Feldman's opinions").  However, she claims that this contradictory evidence is insignificant compared to the substantial evidence in the record that supports the physicians' conclusions.

It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition."  *Pavia v. Colvin,* No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at 4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002)).  In Dr. Feldman's written opinion, he finds that Ms. Esposito can neither sit, stand, nor walk for more than ten continuous minutes without resting for twenty minutes afterwards, and he ultimately concludes that Ms. Esposito's pain would "most likely prevent her" from ever finding full- or part-time employment.  R. 1224, 1244.  In Dr. Grier's written opinion, she concludes that Ms. Esposito suffers from "extreme impairment" with respect to coping with symptoms of depression and appropriately regulating emotions.  R. 1242.

These conclusions are contradicted by substantial evidence in the record.  As explained in the Recommended Ruling, the record evidence cited by the ALJ shows "adequate control of Plaintiff's pain with medication and treatment"; "numerous physical examinations with normal findings and mild to moderate imaging studies"; "treatment notes indicating Plaintiff's improvement with therapy"; and a list of reported daily activities that are "inconsistent with the extreme limitations" to which the treating physicians opined.  Recommended Ruling at 5; R. 955, 957, 1080, 1197, 1200, 1203.  While Ms. Esposito correctly notes that there is also evidence

in the record suggesting that Ms. Esposito suffers from significant physical and social limitations, *see, e.g.,* R. 609, 929-30, these limitations are appropriately reflected in the ALJ's conclusion that Ms. Esposito is "unable to perform any past relevant work" and that she "is limited to work that involves routine tasks and only superficial and incidental interaction with the public or co-workers." R. 190, 195. Ms. Esposito argues that the Recommended Ruling failed to acknowledge the record evidence that was consistent with the treating physicians' conclusions; however, Ms. Esposito has not identified any binding case law requiring the ALJ to outline every aspect of the record that could potentially support the treating physicians' conclusions before declining to give controlling weight to those conclusions.

The Court concludes that the ALJ and the Recommended Ruling appropriately declined to give controlling weight to the opinions of Ms. Esposito's treating physicians, Dr. Feldman and Dr. Grier, in light of the inconsistencies between those opinions and the substantial evidence in the record cited by the ALJ. The ALJ identified "good reasons" not to give controlling weight to the opinions of Dr. Feldman and Dr. Green; thus, the Court chooses not to depart from the Recommended Ruling on this basis. *See Burgess,* 537 F.3d 117, 129-30 (2d Cir. 2008) (failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician" can be a basis for remand (quoting *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999))).

**2) Step Five Analysis**

Next, Ms. Esposito argues that the ALJ and the Recommended Ruling improperly concluded that she could still perform the job of "Surveillance System Monitor," listed in the

Dictionary of Occupational Titles at Section 379.367-010.[1]  According to Ms. Esposito, the vocational expert's testimony incorrectly overstated the number of nationally available jobs in this position.  She also argues that the testimony of the vocational expert contradicted the description of this position under the Dictionary of Occupational Titles; thus, the ALJ should not have relied on the vocational expert's testimony when conducting its "Step Five" analysis.[2]  The Court disagrees.

At the administrative proceeding, the vocational expert testified that approximately 997,000 jobs were available nationwide in the position of "Surveillance System Monitor," a sedentary position with a reasoning level of 3 under the Dictionary of Occupational Titles.  R. 268.  Ms. Esposito challenges this figure, citing to a 2012 Second Circuit case in which this same position was cited as having only 25,000 available jobs nationwide.  *Daniels v. Astrue,* No. 10 CIV 6510 RWS, 2012 WL 1415322 at *17 (S.D.N.Y. Apr. 18, 2012) (describing "surveillance system monitor" as a job "for which there were 1,236 jobs in the New York City area and 25,000 jobs nationally"); Pl. Obj. at 10 (arguing that the "Court should be troubled by" this discrepancy).

For purposes of a "Step Five" analysis, the ALJ may consider work in the national economy that "exists in significant numbers[.]" 20 C.F.R. § 404.1566.  "Courts have generally held that what constitutes a 'significant' number is fairly minimal." *Haskins v. Commissioner of*

---

[1] The ALJ originally found that Ms. Esposito had the Residual Functional Capacity ("RFC") to perform two types of jobs in the national economy, "Surveillance System Monitor" and "Circuit Board Inspector."  R. 196.  Following the ALJ's ruling, however, the Commissioner conceded that the position of "Circuit Board Inspector" had been misclassified; accordingly, the Recommended Ruling determined that the only identifiable job Ms. Esposito could perform was the position of "Surveillance System Monitor."  Recommended Ruling at 6-7, ECF No. 24.
[2] "Step Five" refers to the final step of the five-step analysis set forth in the Social Security Administration Regulations, 20 C.F.R. § 404.1520.  At this stage, the ALJ has already determined that the claimant (1) is not currently engaged in gainful activity; (2) the claimant suffers from a severe impairment; (3) that impairment does not meet the severity of the impairments listed in the regulations; and (4) the claimant cannot perform her past work.  *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982).  The burden shifts to the Commissioner at Step Five, which is the stage at which the ALJ must determine whether there are any jobs which the claimant could still perform.

*Social Sec.*, Civ. No. 5:05-CV-292 (DNH/RFT), 2008 WL 5113781 at *11 (N.D.N.Y. Sept. 11, 2008). As noted in the Recommended Ruling, "the Commissioner need show only one job existing in the national economy that [claimant] can perform." *Bavaro v. Astrue,* 413 F.App'x 382, 384 (2d Cir. 2011). Whether the position of "Surveillance System Monitor" is available nationally at the level of 997,000 jobs, as indicated by the vocational expert in the administrative proceeding, or at a the lower level of 25,000 jobs, as indicated by the vocational expert in *Daniels,* 2012 WL 1415322 at *17, it is undisputed that the position of "Surveillance System Monitor" is available in "significant numbers" for purposes of the ALJ's "Step Five" analysis.[3]

Ms. Esposito also insists that her limitation to "routine tasks" is incompatible with the duties of a "Surveillance System Monitor," as this job requires a reasoning level of 3. This argument was fully considered, and rejected, in the Recommended Ruling, and Ms. Esposito has not identified any Second Circuit case law suggesting that the Court should rule otherwise. *See Jones-Reid v. Astrue,* 934 F.Supp.2d 381, 408 (D. Conn. 2012) ("hypothetical limitation of only short, simple instructions is, therefore, not inconsistent with either jobs requiring [General Educational Development ("GED")] level 2 or 3 reasoning"). The Court will not depart from the Recommended Ruling on this ground.

**3) Credibility Assessment**

Finally, Ms. Esposito argues that the ALJ improperly assessed the credibility of her testimony by failing to give sufficient weight to her subjective testimony about chronic pain. Ms. Esposito compares this case to *Puzycki v. Astrue,* 3:09-cv-01894 (PCD), *Recommended*

---

[3] Ms. Esposito also challenges the general idea of reliance on job incidence data provided by vocational experts in these types of proceedings. While the Court appreciates that there may be occasions requiring an ALJ to question the reliability of data provided by a vocational expert witness, *see Brault v. Social Sec. Admin. Com'r,* 683 F.3d 443, 450 (2d Cir. 2012) ("We do *not* hold that an ALJ *never* need question reliability"), this Court has affirmed the reliance on such data by ALJs without requiring "a step-by-step description of the methodology used," *Jones-Reid v. Astrue,* 934 F.Supp.2d 381, 407 (D. Conn. 2012). The Court finds no reason to disturb the ALJ's decision to rely on such data at this point.

*Ruling* (D. Conn. Nov. 23, 2010), a Social Security case in which the claimant, like Ms. Esposito, had chronic pain from lower back issues.  The recommended ruling in *Puzycki*, which was adopted by the Court, found that the ALJ improperly discredited the claimant's testimony without providing sufficient support for that conclusion: "In this case, as in other cases unfortunately involving this same ALJ, this ALJ 'cherry-picked' portions of the medical record 'that favored his preferred conclusion and ignored all unfavorable aspects, without ever explaining his choices, let alone basing them on evidence in the record.'"  *Id.* at 50 (quoting *Ardito v. Barnhart,* No. 3:04 CV 1633 (MRK), 2006 WL 1662890, at *5 (D. Conn. May 25, 2006)).  Ms. Esposito urges the Court to conclude that the ALJ in her case was similarly improper in discrediting her subjective testimony.

Unlike the circumstances of *Puzycki*, however, the ALJ here did provide specific, well-supported reasons for not finding Ms. Esposito's testimony to be credible, identifying specific evidence in the record that directly contradicted Ms. Esposito's testimony.  R. 190-194.  As explained in the Recommended Ruling, "[t]he ALJ undertook the requisite analysis and provided adequate reasoning in support of his credibility finding."  Recommended Ruling at 10.  Ms. Esposito has not identified any basis for the Court to depart from the Recommended Ruling on this ground.

**Conclusion**

Magistrate Judge Garfinkel's Recommended Ruling [ECF No. 24] is hereby **ACCEPTED**, over objection.  Plaintiff's Motion to Reverse the Decision of the Commissioner [ECF No. 17] is **DENIED**, and Defendant's Motion to Affirm the Commissioner's Decision [ECF No. 18] is **GRANTED**.

SO ORDERED at Bridgeport, Connecticut this 30th day of March, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE